IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LORI MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-00412-CV-RK |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY; | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **AFFIRMED**.

**Standard of Review**

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d

549, 555 (8th Cir. 2003)).  The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

By way of overview, the ALJ determined that Plaintiff has the following severe impairments: generalized anxiety disorder, major depressive disorder, posttraumatic stress disorder (PTSD), schizoid personality disorder, and borderline personality disorder.  The ALJ also determined that Plaintiff has the following non-severe impairments: dyslexia and a history of obesity and bariatric surgery.  However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing").  Additionally, the ALJ found that despite her limitations, Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> She retains the ability to concentrate, persist, and remain on task and pace and adapt to simple, routine, and repetitive tasks, which may require detailed instructions but do not involve complex tasks.  She can concentrate, persist, and remain on task and pace to adapt to work in an environment that is free of fast-paced production requirements and involves only simple, work-related decisions with few, if any, work place changes. Job duties should not require any interaction with the general public.  She can work around co-workers throughout the day but with only occasional interaction with co-workers and supervisors.

(Tr. 17.)  Although the ALJ found that Plaintiff is unable to perform any past relevant work, the ALJ concluded based on her age, education, work experience, and RFC, that Plaintiff can perform jobs that exist in significant numbers in the national economy.

On appeal, Plaintiff argues that the ALJ failed to include limitations from Dr. Keith Allen's opinion in the RFC and did not provide any explanation for why those limitations were excluded. Additionally, Plaintiff argues that the ALJ's finding, that the opinions of Plaintiff's treating providers were not consistent with or supported by the evidence, is not supported by substantial evidence.  The Court will address these arguments in turn.[1]

---

[1] The Court finds much of Defendant's brief persuasive.  Portions are incorporated without further reference.

I.  **The ALJ's Exclusion of Limitations from Dr. Allen's Opinion Does Not Violate SSR 96-8p**

Plaintiff first contends the ALJ's decision not to include limitations from Dr. Allen's opinion in the RFC violates SSR 96-8p because the ALJ failed to explain why those limitations were excluded. Specifically, Plaintiff argues that although Dr. Allen opined that Plaintiff's ability was "impaired for detailed or complex instructions" and Plaintiff could only perform "less than four step instructions" (Tr. at 65), the ALJ found Plaintiff retained the RFC to perform simple, routine, and repetitive tasks "which may require detailed instructions but do not involve complex tasks" (Tr. at 17). (Doc. 11 at 9-10.) Plaintiff concludes, therefore, the ALJ failed to explain why she did not include Dr. Allen's limitation concerning Miller's impaired ability to perform detailed instructions and, instead, specifically found she could perform such instructions. (*Id.* at 10.)

SSR 96-8p provides: "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."

The Court finds Plaintiff's argument without merit. The ALJ's determination reads, in part:

> The prior administrative medical findings of Dr. Allen are persuasive to the extent they indicate that the claimant is able to perform simple, routine and repetitive tasks, as I find such finding to be supported by the objective medical evidence of record, and consistent with evidence from other sources as fully discussed above or in Dr. Allen's summary at Exhibit 1A. Also, as a State Agency psychological consultant, Dr. Allen is well versed in the Social Security Act and regulations, including all pertinent definitions and procedures utilized by the Social Security Administration in determining whether an individual is entitled to disability benefits. Some of the specific consistency and supportability factors in this case include the claimant's relatively conservative mental health treatment and her admitted capabilities. However, Dr. Allen's limitation to less than 4-step instructions is not persuasive, as it is not supported by the record as a whole, particularly the claimant's activities of daily living, which were discussed above and which require at least 4 step instructions, if not more.

(Tr. 20.) As to Plaintiff's activities of daily living, the ALJ made the following observations and findings:

> Notably, medical evidence of record shows that in May of 2019, the claimant was working on some new business ventures (Ex. 2F/15). Subsequent notes show she looked to do her own business (Ex. 2F/17). Notes show she engaged in doing "independent types of jobs which would bring in money" (Ex. 2F/16). She struggled with her business dealings and found many problems related to her

3

daughter-in-law doing the business with her (Ex. 2F/14). Notes dated May 17, 2019, indicate she had remodeled her basement to start her own clothing boutique for online sales/truck shows (Ex. 2F/1). However, to date there is no objective evidence of any actual self-employment earnings, as none have been reported to the Internal Revenue Service (IRS).

In addition to the claimant's work record, the claimant admitted a generally active lifestyle, not limited to the extent one would expect given her complaints of subjective pain and limitation. The claimant variously reported and testified of capacity for taking care of their own personal needs, cooking, doing laundry, driving an automobile to get around, shopping in stores for necessities, using a computer, working, moving into a new home, and venturing to start their own business (Ex. 5E/2-5, 10; Ex. 2F/1, 14-17; Ex. 21F/8). It appears that despite her impairments, she has engaged in a somewhat normal level of daily activities and interaction. Despite the allegations of symptoms and limitations preventing all work, the record reflects that the claimant went on a vacation since the alleged onset date (Ex. 2F/7). Although a vacation and a disability are not necessarily mutually exclusive, the claimant's decision to go on a vacation is generally inconsistent with the alleged severity of symptoms and limitations. The claimant also remodeled her basement to start her own clothing boutique for online sales/truck shows, which also is generally inconsistent with the alleged severity of symptoms and limitations (Ex. 2F/1). On March 25, 2020, the claimant reported to a neuropsychological examiner that she goes to thrift stores and sells crafts online; she has two dogs she walks daily; and she cleans her house frequently (Ex. 12F/3). In sum, the claimant's described limitations in work related activities and activities of daily living are inconsistent with the relatively benign medical evidence and other factors discussed in this decision, which does not support that they are entirely due to any established impairments.

The Court finds the ALJ's above explanations are sufficient to comply with SSR 96-8p. Contrary to Plaintiff's assertion otherwise, the record shows the ALJ carefully considered Dr. Allen's opinions and, to the extent Dr. Allen's opinions were not adopted, the ALJ referenced contrary evidence in the record concerning Plaintiff's daily living activities.

II. **The ALJ's Finding that Plaintiff's Treating Providers' Opinions Were Not Consistent With or Supported by the Evidence is Supported by Substantial Evidence**

Plaintiff asserts the ALJ's finding (that Plaintiff's treating providers' opinions were not consistent with or supported by the evidence) is not supported by substantial evidence. In particular, Plaintiff challenges the ALJ's evaluation of medical opinions from psychiatric providers Allison Gilbert, P.A.-C.; Stacy Mason, M.S., L.P.C.; and Jennifer Brown, A.P.R.N., each of which the ALJ found were "extreme in light of the actual findings documented in the record" and "generally not consistent with the record as a whole or well supported by the objective

4

evidence of record[.]" (Tr. 21.) Plaintiff points out that Ms. Gilbert opined that Plaintiff experienced moderate, marked, and extreme limitations in her various mental abilities, would be off-task 20% or more of the workday, and would miss three days of work per month. (Tr. 418-19.) Ms. Mason found that Plaintiff suffered from mostly marked and extreme limitations, would be off-task 25% or more of the workday, and would miss four or more days of work per month. (Tr. 427-28, 516-17.) Ms. Brown also found that Plaintiff suffered from numerous marked limitations and would miss work four days per month. (Tr. 520-21, 611-12.) Plaintiff complains the ALJ's findings as to these opinions are not supported by substantial evidence.

The ALJ evaluated the supportability of these three opinions by comparing the individual providers' own objective findings to their opinions. *See* 20 C.F.R. § 404.1520c(c)(1). For example, the ALJ found Ms. Gilbert's normal mental status evaluation findings and Plaintiff's own reports in the records did not support Ms. Gilbert's opinion that Plaintiff had marked and extreme limitations. (Tr. 21 (citing Tr. 653, 655, 672).) These records showed full orientation, no acute distress, normal level of consciousness, and good personal hygiene. (Tr. 653, 655, 672.) The ALJ specifically noted these normal examination findings were made on the same day Ms. Gilbert suggested Plaintiff had marked and extreme limitations. (Tr. 21; *see* Tr. 429-30, 672.)

When discussing the supportability of Ms. Mason's opinion, the ALJ noted that Ms. Mason assigned Plaintiff a Global Assessment of Functioning (GAF) score that indicated mild limitations (Tr. 21-22). Although Plaintiff argues that GAF scores offer little probative value in social security disability cases (Doc. 11 at 17), the ALJ was not relying on this score to support the ALJ's own RFC; instead, the ALJ was simply considering this score in the context of whether Ms. Mason's extreme limitations opinion was supported by Ms. Mason's own findings. (Tr. 21-22.) Furthermore, the ALJ noted Ms. Mason's progress notes described Plaintiff's subjective reports, such as a depressed or dysthymic mood, but Ms. Mason did not identify deficits in cognition, memory, insight, or judgment that could account for the limitations in her opinion. (Tr. 21-22; Tr. 689-702.)

Finally, the ALJ also specifically discussed the supportability of Ms. Brown's opinion (Tr. 22). The ALJ noted examinations by Ms. Brown showed Plaintiff had full orientation, cooperative behavior, good eye contact, normal psychomotor activity, normal speech, normal affect, normal thoughts, good insight, good judgment, intact cognition, intact memory, and intact fund of knowledge. (Tr. 16 (citing Tr. 594, 599, 602, 605, 608, 630).)

Based on the normal objective findings of each of these providers, the ALJ found their opinions were not well supported. (Tr. 21; *see* 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 404.1502(g) ("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.").)

Beyond the lack of supporting abnormalities described in the various mental status examinations, the ALJ found these opinions were inconsistent with other evidence in the record. (Tr. 18-22; *see* 20 C.F.R. § 404.1520c(c)(2).) For example, the ALJ observed that Plaintiff's treatment during the relevant period was essentially conservative in nature. (Tr. 19-20.) The ALJ acknowledged Plaintiff's treatment in a partial hospitalization program shortly before the beginning of the relevant period, but her treatment since that time consisted of medication, therapy, and transcranial magnetic stimulation. (Tr. 17-20; *see* Tr. 594, 599, 602, 605, 608, 630, 689-702.) The ALJ noted that Plaintiff did not require more intensive treatment such as hospitalization or emergency care during the relevant period, and the record showed improvement with treatment. (Tr. 20; *see* Tr. 385, 389, 391.) Plaintiff also reported improvement with her current treatment. (Tr. 385, 389, 391.) The ALJ properly considered Plaintiff's response to conservative treatment, and that the treatment Plaintiff received was not consistent with the extreme findings in these opinions. *See* 20 C.F.R. § 404.1520c(c)(2); *see also Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020); *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

In addition to conservative management, the ALJ noted the situational nature of many of Plaintiff's complaints. (Tr. 19.) Specifically, the ALJ observed that Plaintiff's mood deficits often appeared related to situational stressors such as jobs, family, and financial worry, as opposed to mental impairments. (Tr. 19; *see, e.g.*, Tr. 385, 387, 622, 743, 744.) Situational depression is not a basis for an award of disability benefits. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("The medical record supports the conclusion that any depression experienced by Gates was situational in nature, related to marital issues, and improved with a regimen of medication and counseling."); *Mitchell v. Sullivan*, 907 F.2d 843 (8th Cir. 1990).

The ALJ also considered Plaintiff's reported activities of daily living in statements to the SSA and medical providers. (Tr. 19.) The ALJ noted Plaintiff could cook, drive a car, do laundry, shop for necessities, use a computer, move into a new home, and start a business. (Tr. 18-19 (citing

6

Tr. 255-58, 263, 385, and 398-401).) Daily activities are a proper consideration when evaluating Plaintiff's claim. *See Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018); *Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018). This full range of activities was inconsistent with the treating source opinions. *See* 20 C.F.R. § 404.1520c(c)(2).

The ALJ also discussed Plaintiff's work activity. (Tr. 16.) Even part-time work activity can suggest a Plaintiff is not as limited as alleged. *See* 20 C.F.R. § 404.1571; *see also Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005). The ALJ discussed Plaintiff's work activity, including starting a clothing boutique in her basement and selling CBD oil at trade shows. (Tr. 16; *see* Tr. 385, 398-401, 412.) This work activity was inconsistent with the functional limitations described in the treating source opinions. *See* 20 C.F.R. § 404.1520c(c)(2). Based on all these factors, the ALJ properly found the record as a whole was inconsistent with both the more extreme opinions of Plaintiff's providers and Plaintiff's own subjective complaints. Nevertheless, the ALJ did acknowledge Plaintiff suffered from real functional limitations and accounted for them accordingly in the ALJ's RFC determination. (Tr. 17.)

Plaintiff does not dispute the normal findings on the mental status examinations with her providers, but instead argues these brief indications are not representative of her overall functioning. (Doc. 11 at 14). However, the ALJ did not just consider the objective findings when evaluating these opinions and finding the RFC; she considered the entire record to get a complete picture of Plaintiff's impairments. Specifically, regarding these three opinions, the ALJ considered the consistency of the opinions with the record as a whole. As discussed above, the ALJ considered Plaintiff's reported activities, work activity, the situational nature of her complaints, and her conservative treatment. (Tr. 19-20.)

Plaintiff also argues that normal mental status examination findings are of little probative value because the diminishing of her symptoms was a product of the treatment and social supports she received. (Doc. 11 at 14-15). However, the ALJ specifically addressed Plaintiff's ongoing treatment and social supports when considering Plaintiff's argument that she met Listing 12.06. (Tr. 16.) One of the requirements of Listing 12.06 is that there must be evidence that a plaintiff relies on medical treatment or a highly structured setting on an ongoing basis to diminish the symptoms and signs of a mental disorder. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06C. In this case, the ALJ found that Plaintiff's treatment and social supports did not support the allegation

that Plaintiff had a minimal capacity to adapt to change in the environment or to demands that are not already part of her daily life. (Tr. 16.) The ALJ cited Plaintiff's discharge from her partial hospitalization program and subsequent improvement with medication. (Tr. 16.) The ALJ also noted Plaintiff's work activity, including selling CBD oil at trade shows, and that she was able to move into a new house. (Tr. 16 (citing Tr. 412, 655).) While Plaintiff can argue she needs significant social support from her spouse and treatment, the ALJ considered this possibility, but permissibly concluded that evidence showed Plaintiff could adapt to change or demands not already part of her daily life. (Tr. 16.) Substantial evidence supports this conclusion.

Plaintiff argues that the ALJ improperly relied on her plans to go on vacation and her business ventures as reasons to discount the treating psychiatric providers' opinions. (Doc. 11 at 16-17.) However, whether Plaintiff actually went on this vacation is immaterial to the ALJ's reasoning. As the ALJ stated, "[a]lthough a vacation and a disability are not necessarily mutually exclusive, [Plaintiff's] decision to go on a vacation is generally inconsistent with the alleged severity of symptoms and limitations." (Tr. 18.) Plaintiff alleges she met a listing requirement that she cannot function without significant social supports, and planning a vacation is inconsistent with this allegation.

Plaintiff also argues that the ALJ did not consider the nature or frequency of her business ventures. (Doc. 11 at 17.) But Plaintiff's work activity in conjunction with the other evidence in the record supports the ALJ's finding that the opinions were inconsistent with the evidence as a whole. Even work activity that would not rise to substantial gainful activity levels is a valid consideration in determining the extent of Plaintiff's limitations. *See* 20 C.F.R. § 404.1571. Furthermore, although she did not earn at substantial gainful activity levels, the records showed Plaintiff worked for retailers, a supermarket, and a school district (Tr. 13-14), and she reported business ventures to her psychological providers (Tr. 20). This work activity, in conjunction with other reported daily activities, led the ALJ to conclude Plaintiff was not as limited as alleged. (Tr. 18-19.) *See Medhaug*, 578 F.3d at 816; *Goff*, 421 F.3d at 792 (part-time work is inconsistent with allegations of disability).

In sum, substantial evidence supports the ALJ's finding that Plaintiff's psychiatric providers' opinions were not persuasive. In making this determination, the ALJ considered the normal objective findings from these providers and the consistency of their opinions with the record as a whole. She found conservative management after Plaintiff completed her partial

8

hospitalization program. Furthermore, the records showed Plaintiff had several activities of daily living, worked at various jobs, and started business ventures. Based on the relatively conservative management following Plaintiff's completion of her partial hospitalization program and the various daily living activities including working at various jobs and starting multiple business ventures, the ALJ found Plaintiff's psychiatric providers' opinions were not persuasive. Plaintiff offers a different interpretation of the evidence, but what matters is whether the ALJ's findings are supported by substantial evidence, as they are in this case. *Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) ("If substantial evidence supports the Commissioner's decision, we may not reverse even if we might have decided the case differently." (internal quotation marks omitted)). Accordingly, the Court defers to the ALJ's findings in this regard because they are supported by substantial evidence. Plaintiff's argument is without merit.

## Conclusion

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the Court concludes that substantial evidence on the record as a whole supports the ALJ's decision for the reasons set forth in the Commissioner's brief.

IT IS THEREFORE ORDERED that the decision of the ALJ is **AFFIRMED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: July 15, 2022